**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHWESTERN DIVISION**

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | Case No.  1:04-cr-77 |
| | ) | |
| John Lee. Skinner, | ) | **ORDER DENYING § 2255 MOTION** |
| | ) | |
| Defendant. | ) | |

_____

Before the Court is John Lee Skinner's motion to vacate, set aside or correct sentence brought pursuant to 28 U.S.C. § 2255.  The motion is filed pro se.  The government resists the motion.  For the reasons explained below the Court denies the motion.

**I.    BACKGROUND**

In February of 2004, John L. Skinner traveled from Kansas City, Kansas, to Bismarck, North Dakota.  Upon arrival Skinner set up a crack cocaine distribution ring with his co-defendant Kerrie Wolf.  Wolf was living in a Bismarck trailer court at the time.  Profits were returned to Kansas City via money orders and bus courier.  Additional crack cocaine was also sent to Bismarck via bus courier.  Records show numerous telephone calls between numbers associated with Skinner and Wolf and the Kansas City area. between February and April of 2004.  Wolf testified against Skinner at trial, as did a number of Skinners customers.

A telephone call from an anonymous tipster brought the operation to the attention of the Bismarck Police Department.  Surveillance was conducted.  A traffic stop of a vehicle which Wolf was driving lead to her arrest and the arrest of another woman in the vehicle.  A search warrant was obtained for the Wolf residence.  A search on April 6, 2004, turned up a great deal of

evidence of drug use and dealing including 51.38 grams of crack cocaine. Skinner was arrested the same day as the search and charged in state court. Those charges were later dropped when Skinner and Wolf were indicted in Federal Court on October 1, 2004.

Skinner was convicted, after a jury trial, of one count of conspiracy to possess with intent to distribute 50 grams or more of cocaine base and one count of possession of 50 grams or more of cocaine base with intent to distribute. He was sentenced to 120 months imprisonment on April 7, 2005. He is currently serving his sentence at the United States Penitentiary at Leavenworth, Kansas. An appeal was taken and rejected in an opinion dated January 6, 2006. United States v. Skinner, 433 F.3d 613 (8th Cir. 2006). The current § 2255 motion was filed on October 2, 2006. Skinner alleges, among other things, ineffective assistance of counsel, pre-indictment delay, and that coerced testimony was admitted at trial.

## II.    DISCUSSION

A motion made pursuant to 28 U.S.C. § 2255 requires a showing of either constitutional or jurisdictional error, or a "fundamental defect" resulting in a "complete miscarriage of justice." Davis v. United States, 417 U.S. 333, 346 (1974); Hill v. United States, 368 U.S. 424, 428 (1962). A Section 2255 motion is not a substitute for a direct appeal, and a movant "must clear a significantly higher hurdle than would exist on direct appeal." United States v. Frady, 456 U.S. 152, 166 (1982).

### A.    Ineffective Assistance of Counsel

To establish deficient performance, a defendant must show counsel made errors "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland v. Washington, 466 U.S. 668, 687 (1984). In Strickland, the Supreme Court established a two-pronged test for analyzing ineffective assistance of counsel claims. First,

it must be shown that counsel's effectiveness fell below an objective standard of reasonable representation taking into consideration prevailing professional norms. Id. at 688.  Second, it must be demonstrated that counsel's performance prejudiced the defense.  In other words, under this second prong, it must be proven that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different."  Id. at 694.  Both prongs of the Strickland test must be satisfied to prove a conviction is unreliable as the result of a breakdown in the adversarial process.  Id.

There is a strong presumption that counsel provided "adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  Strickland, 466 U.S. at 690; Vogt v. United States, 88 F.3d 587, 592 (8th Cir. 1996).  A court reviewing counsel's performance must make every effort to eliminate hindsight and second-guessing.  Strickland, 466 U.S. at 689; Schumacher v. Hopkins, 83 F.3d 1034, 1036-37 (8th Cir. 1996).  Under the Strickland standard, strategic decisions that are made after a thorough investigation of both the law and facts regarding plausible options are virtually unchallengeable.  Strickland, 466 U.S. at 690.

Skinner argues his trial counsel was unprofessional, did not adequately review all of the discovery in the case, and did not call all of the witnesses at trial that should have been called.  Skinner also argues that he was not present when the Wolf residence was searched and that Eric Johnson changed his story.  Skinner also makes reference to a controlled buy that was not brought up at trial.  He also references other unnamed persons who are allegedly referenced in some discovery but were not called at trial.  He then concludes that this information might have made a difference.

The Court will admit that the performance of defense counsel in this case was not stellar.

Nevertheless, even if Skinner were able to show the performance of defense counsel was unreasonable Skinner has failed to show any prejudice.  Skinner must show a reasonable probability that, but for counsel's errors, the result of the trial would have been different.  Strickland, 466 U.S. at 694.  All Skinner offers is speculation that calling additional witnesses might have helped.  One might also speculate that these additional witnesses would have hurt Skinner's cause.  Second guessing trial strategy will not suffice and mere speculation proves nothing.

As the Court recalls the evidence against Skinner was overwhelming.  Skinner's co-defendant, Kerrie Wolf, testified against him and explained how the entire drug ring operated, how she met Skinner, and how the proceeds of the crack cocaine sales were sent back to Kansas City. (Transcript of Trial at 327-367).  Other witnesses including Heather Mattson, (Tr. at 440-67), Twyla Hansen, (Tr. at 385-94), and Eric Johnson (Tr. at 401-18), testified as to having purchased crack cocaine from Skinner, smoked crack cocaine with Skinner, and having observed him sell crack cocaine to others.  The testimony of Wolf and the others tied Skinner to the crack cocaine which was found in the false beam in the trailer.  Defense counsel did cross-examine Eric Johnson about inconsistencies in his story. (Tr. at 426-427).  Defense counsel cannot be faulted for failing to refute the obvious.  Skinner has failed to demonstrate ineffective assistance of counsel.

### B. Coerced Testimony

Skinner argues Heather Mattson, Twyla Hansen, Eric Johnson, and Kerrie Wolf all gave "coerced" confessions when they testified at trial.

Heather Mattson, had an agreement with the government that she would not be prosecuted if she testified truthfully at trial. (Tr. 440).  Skinner extrapolates this fact into a "coerced

confession" and then attempts to show various weaknesses in her testimony. The jury was fully aware of Heather Mattson's arrangement with the government. The jury was instructed regarding the weight to be accorded testimony given under grant of immunity. Heather Mattson was subjected to cross-examination at trial. (Tr. at 467).

Twyla Hansen was witness for the government at trial. She was not charged in the conspiracy. Skinner alleges Hansen gave a "coerced confession" and was given immunity by the government. Hansen testified she bought crack cocaine from Skinner a number of times. Tr. at 389-90. She also testified to smoking crack with Skinner a number of times. (Tr. at 391). She was a mere user and no deals were made between her and the government which was only interested in her testimony. Hansen was cross-examined at trial. (Tr. at 394).

Eric Johnson came to Bismarck from Kansas City on April 2, 2004. (Tr. at 403). Johnson and Skinner are cousins. (Tr. at 405). Johnson brought additional crack cocaine up from Kansas City for Skinner and Wolf to sell. (Tr. 403-04). Johnson was arrested when the Kerrie Wolf residence was raided and searched on April 6, 2004. (Tr. at 406). He was charged and pled guilty in state court. (Tr. at 402). He had an agreement with federal authorities that if he would testify truthfully at the trial of Skinner he would not be charged in federal court. (Tr. at 413). The jury was aware of this agreement.

Kerrie Wolf was a charged co-defendant in the case against Skinner. She accepted a plea agreement and pled guilty to a charge of conspiracy to deliver crack cocaine. (Tr. at 328). Wolf testified extensively about her involvement with Skinner and their crack cocaine distribution operation. (Tr. 337-58). Here arrangement was brought out in open Court and was available for the jury to consider in deciding what weight to give her testimony. Wolf was also subject to cross-examination by defense counsel. (Tr. 367-82).

Juries are free to weigh all the evidence properly before them and decide what testimony they believe and what testimony they don't. The jury was well aware of the arrangements the witnesses had with the government. The witnesses were subject to cross-examination. Skinner's claim of "coerced confessions" is wholly unsupported and amounts to nothing more than an attempt to reargue the evidence. No attempt is made to demonstrate constitutional error.

Skinner also seems to argue that because he was absent when the Kerrie Wolf residence was searched and the crack cocaine was found in the false beam that he cannot be linked to the drugs. Of course this argument has no merit as possession may be joint or constructive as well as sole. The jury instructions defined all the various types of possession which could lead to Skinner's conviction. There was no error in this. The indictment charged a conspiracy lasting from March 1, 2004, until April 7, 2004. It was proper for the jury to consider all the crack cocaine possessed by the members of the conspiracy during this time period in arriving at the decision that the conspiracy involved 50 or more grams. Skinner may not distance himself from the crack cocaine found in the false beam that was brought up to Bismarck by Eric Johnson as there was sufficient evidence for the jury to conclude that both Johnson and Skinner were part of the same conspiracy. These arguments fail.

**C.    Pretrial Delay**

Skinner argues his constitutional right to a speedy trial was violated when he was held on state charges from April 6, 2004, until his indictment on federal charges on October 1, 2004. The state charges were dropped after Skinner was indicted in federal court. The state and federal charges were identical.

Skinner raised this very same argument on direct appeal. United States v. Skinner, 433 F.3d 613, 616 (8th Cir. 2006). The argument was rejected. Id. In the absence of an intervening

6

change in the law or newly discovered evidence, a § 2255 motion may not be used to reargue a claim that was rejected on direct appeal. English v. United States, 998 F.2d 609,613 (8th Cir. 1993).

Skinner does not argue any intervening change in the law.  He does suggest there is new evidence that state and federal law enforcement were working together to delay his trial to the advantage of the government.  This is the same argument Skinner advanced on direct appeal.  Despite his assertions that new evidence of this collusion exists, Skinner has not presented anything to the Court to support his assertion other than two references to the trial transcript.  Even if Skinner is correct in his assertion that his speedy trial rights were violated he must still show actual prejudice to the presentation of his defense. Skinner, 433 F.3d at 616.  Skinner has not addressed the issue of prejudice.  In the absence of any actual or substantial prejudice this claim must fail.

### D.     Evidentiary Issue

The final issue raised by Skinner is in regard to the admission at trial of portions of telephone calls made by Skinner to his co-defendant Kerrie Wolf while he was detained in the Burleigh County Jail on state charges.  Skinner alleges "they could have made copies to say what ever (sic) they wanted to here (sic) bye (sic) just putting them together they just took and put together what they needed."  Skinner seems to be attacking the foundation for the admission of the tapes.  The argument is entirely undeveloped or supported.  The government did lay a fairly extensive foundation as to the recorded telephone calls at trial. (Tr. at 500-504).  Defense counsel questioned DEA Agent Ortega regarding the recordings.  Copies of the recordings and transcripts of the portions introduced a t trial were provided to defense counsel. (Tr. at 506).  Skinner has failed to support his argument and mere speculation will not suffice.  The claim fails.

### III.    CONCLUSION

Based upon the entire file and upon the foregoing discussion, it is **HEREBY ORDERED** that:

1. John Lee Skinner's Section 2255 Motion is **DENIED**.

2. The court certifies that an appeal from the denial of this motion may not be taken in forma pauperis because such a appeal would be frivolous and cannot be taken in good faith.  Coppedge v. United States, 369 U.S. 438, 444-45, 82 S.Ct. 917 (1962).

3. Upon the entire record before the court, dismissal of the motion is not debatable, reasonably subject to a different outcome on appeal, or otherwise deserving of further proceedings.  Barefoot v. Estelle, 463 U.S. 880, 893 & n.4, 103 S.Ct. 3383 (1983).  Therefore, a certificate of appealability will not be issued by this court.[1]

**IT IS SO ORDERED.**

Dated this 6th day of December, 2006.

/s/ *Patrick A. Conmy*
Patrick A. Conmy, Senior District Judge
United States District Court

---

[1] The Court of Appeals for the Eighth Circuit has opined that the district courts possess the authority to issue Certificates of Appealability under Section 2253(c).  Tiedeman v. Benson, 122 F.3d 518, 522 (8th Cir. 1997).